## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| COURTNEY CONNOR, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| EQUIFAX INFORMATION | ) | |
| SERVICES LLC | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| And | ) | |
| | ) | |
| RUSHMORE LOAN | ) | |
| MANAGEMENT SERVICES LLC | ) | |
| | ) | |
| **Defendants.** | ) | |

## COMPLAINT

COMES NOW the Plaintiff, Courtney Connor ("Plaintiff"), and for his Complaint against the Defendants Equifax Information Services LLC and Rushmore Loan Management Services LLC. Plaintiff alleges as follows:

## PRELIMINARY STATEMENT

1. This is an action for actual, statutory, and punitive damages, and costs and attorney's fees brought pursuant to the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA"), which relates to the proper dissemination and use of consumer credit and other financial information.

## JURISDICTION & VENUE

2. The jurisdiction of this Court is conferred by 15 U.S.C. § 1681 and 28 U.S.C. § 1331.

3.      Venue in this District is proper in that Plaintiff resides here, Defendants transact business here and the conduct complained of occurred here.

## PARTIES

4.      Plaintiff Courtney Connor is a natural person that resides in the State of Kansas.

5.      Plaintiff is a "consumer" as defined by the FCRA, 15 U.S.C. § 1681a(c).

6.      Rushmore Loan Management Services LLC ("Rushmore") is an entity that regularly transacts business in Kansas.

7.      Rushmore is a furnisher of information as contemplated by FCRA § 1681s-2(a) & (b), that regularly and in the ordinary course of business furnishes information to one or more consumer reporting agencies.

8.      Equifax Information Services LLC ("Equifax"), is an entity, registered to do business in Kansas as a foreign entity that regularly engages in business in the same.

9.      Equifax is a nationwide credit reporting agency whose principal purpose is the composition and issuance of consumer reports.  Equifax is a consumer reporting agency for the purposes of 15 U.S.C. § 1681 et seq.

## FACTS COMMON TO ALL CLAIMS

10.     Plaintiff repeats, re-alleges, and incorporates by reference all paragraphs above as if fully rewritten here.

11.     On or about February of 2005 Plaintiff and Lynise Connor, his wife, obtained a mortgage ("Mortgage") for a home purchase.

12.     On or about February of 2014, the Mortgage was assigned to Nationstar Mortgage LLC ("Nationstar").

13.     After some financial difficulties, Plaintiff fell behind on his Mortgage payments.

14.     On or about May of 2015, Nationstar initiated foreclosure proceedings in the Wyandotte County District Court.

15.     On or about October 20, 2017, the Wyandotte County District Court issued its judgement in favor of Nationstar versus Plaintiff and his wife.

16.     On or about April of 2018, the Mortgage, including the rights to the judgment, was assigned to U.S. Bank N.A.

17.     Following this purchase, U.S Bank N.A. named Defendant Rushmore as the servicer of the Mortgage.

18.     In September 2018, the property that was collateral to the Mortgage was sold in a trustee sale.

19.     There was no deficiency balance following the completion of the trustee sale.

20.     On or about March 12, 2019, Plaintiff, through counsel, sent to Rushmore a qualified written request pursuant to the Real Estate Settlement Procedures Act, 12 U.S.C. § 2605, requesting additional information regarding the Mortgage.

21.     On or about April 23, 2019, Rushmore sent to Plaintiff's counsel a summary ("Rushmore Response") of the Mortgage, including the Note, the Mortgage, and other information describing aspects of the Mortgage's history.

22.     Additionally, the Rushmore Response stated in plain terms that "the property was sold at a foreclosure sale on September 25, 2018".

23.     In late 2020, Plaintiff sought to improve his credit following his negative situation with his Mortgage.

24.     On or about January 22, 2021, Plaintiff obtained a copy of his consumer report ("January 22 Consumer Report").

25.     To Plaintiff's shock and disappointment, he noticed that the Mortgage, as furnished by Rushmore, was an inaccurately reported tradeline ("Rushmore Tradeline") on his Equifax consumer report.

26.     On the January 22 Consumer Report, the Rushmore Tradeline inaccurately cites the payment status as "Late 120 Days."

27.     More concerningly, the two-year payment history of the Rushmore Tradeline inaccurately lists multiple 120-day-late notations after the property subject to the Mortgage was sold in the trustee sale in September of 2018.

28.     Because there was no deficiency balance due following the trustee's sale, Plaintiff could not have possibly been late on any payments following the trustee's sale.

29.     Finally, the two-year payment history of the Rushmore Tradeline inaccurately lists a foreclosure notation for May of 2019.

30.     Not only was the reporting of the Rushmore Tradeline inaccurate, but it was harmful and derogatory to Plaintiff's creditworthiness.

31.     On or about February 2, 2021, Plaintiff conducted a dispute (February 2 Dispute) to Equifax via telephone.

32.     During the February 2 Dispute, Plaintiff identified the inaccurate and harmful reporting of the Rushmore Tradeline and demanded that the inaccurate and harmful reporting be removed or corrected.

33.     Pursuant to 15 U.S.C. 1681i of the FCRA, Equifax was then obligated to reasonably investigate Plaintiff's February 2 Dispute.

34.     Pursuant to 15. U.S.C. 1681i(a)(2) of the FCRA, Equifax was obligated inform Rushmore the furnisher of the Rushmore Tradeline about the February 2 Dispute and its content.

35.     Upon information and belief Equifax notified Rushmore about Plaintiff's February 2 Dispute along with its content.

36.     Pursuant to 15 U.S.C. 1681s-2(b) of the FCRA, Rushmore was then obligated to conduct a reasonable investigation with respect to the disputed information on Plaintiff's consumer report, review all relevant information provided by Equifax with respect to the February 2 Dispute, and report its results of the investigation to Equifax.

37.     In the alternative, Equifax failed to notify Rushmore about Plaintiff's February 2 Dispute along with its content.

38.     On or about February 8, 2021, Plaintiff sent a written dispute letter ("February 8 Dispute") to Equifax, identifying the inaccurate, harmful, and obsolete reporting of the Rushmore Tradeline and demanding that the inaccurate, harmful, and obsolete reporting of the information be removed.

39.     Upon information and belief, Equifax received this February 8 Dispute.

40.    Pursuant to 15 U.S.C. 1681i of the FCRA, Equifax was then obligated to reasonably investigate Plaintiff's February 8, Dispute.

41.    Pursuant to 15. U.S.C. 1681i(a)(2) of the FCRA, Equifax was obligated to forward Plaintiff's February 8 Dispute to Rushmore, the furnisher of the Rushmore Tradeline.

42.    Upon information and belief Rushmore received Plaintiff's February 8 Dispute to Rushmore.

43.    Pursuant to 15 U.S.C. 1681s-2(b) of the FCRA, Rushmore was then obligated to conduct a reasonable investigation with respect to the disputed information on Plaintiff's consumer report, review all relevant information provided by Equifax with respect to the February 8 Dispute, and report its results of the investigation to Equifax.

44.    In the alternative, Equifax failed to forward Plaintiff's February 8 Dispute to Rushmore and failed to conduct any investigation as to Plaintiff's dispute.

45.    Plaintiff received a response from Equifax dated February 12, 2021 ("February 12 Response") regarding the February 2 Dispute.

46.    Plaintiff was irritated to see that the inaccuracies that she disputed regarding the Rushmore Tradeline, were not corrected.

47.    More specifically, the February 12 Response stated that Rushmore verified to Equifax that the current account status and the prior pay history on the Rushmore Tradeline was being reported accurately.

48.     On the February 12 Response, Equifax showed the Rushmore Tradeline as having an account status of "Over 120 Days Past Due Mortgage" as well as numerous late payment notations after the trustee's sale of September 2018.

49.     Additionally, the February 12 Response listed in the Rushmore Tradeline payment history the foreclosure notation to mid-2019.

50.     On or about March 4, 2021, Plaintiff sent an online dispute through the Equifax website ("March 4 Dispute") to Equifax, identifying the inaccurate, harmful, and obsolete reporting of the Rushmore Tradeline and demanding that the inaccurate, harmful, and obsolete reporting of the information be removed.

51.     Pursuant to 15 U.S.C. 1681i of the FCRA, Equifax was then obligated to reasonably investigate Plaintiff's March 4, Dispute.

52.     Pursuant to 15. U.S.C. 1681i(a)(2) of the FCRA, Equifax was obligated to forward Plaintiff's March 4 Dispute to Rushmore, the furnisher of the Rushmore Tradeline.

53.     Upon information and belief Rushmore received Plaintiff's March 4 Dispute to Rushmore.

54.     Pursuant to 15 U.S.C. 1681s-2(b) of the FCRA, Rushmore was then obligated to conduct a reasonable investigation with respect to the disputed information on Plaintiff's consumer report, review all relevant information provided by Equifax with respect to the March 4 Dispute, and report its results of the investigation to Equifax.

55.     In the alternative, Equifax failed to forward Plaintiff's March 4 Dispute to Rushmore and failed to conduct any investigation as to Plaintiff's dispute.

56.     On or about April 8, 2021, Plaintiff sent a written dispute letter ("April 8 Dispute") to Equifax, identifying the inaccurate, harmful, and obsolete reporting of the Rushmore Tradeline and demanding that the inaccurate, harmful, and obsolete reporting of the information be removed.

57.     Attached and enclosed in this April 8 Dispute was a portion of the Rushmore Response describing how the property subject to the Mortgage was sold on September 2018.

58.     By including this additional documentation from the Rushmore Response, Plaintiff hoped to illustrate the inherent contradiction between how the Rushmore Tradeline was being reported and what happened with the Mortgage.

59.     Upon information and belief, Equifax received this April 8 Dispute.

60.     Pursuant to 15 U.S.C. 1681i of the FCRA, Equifax was then obligated to reasonably investigate Plaintiff's April 8, Dispute.

61.     Pursuant to 15. U.S.C. 1681i(a)(2) of the FCRA, Equifax was obligated to forward Plaintiff's April 8 Dispute to Rushmore, the furnisher of the Rushmore Tradeline.

62.     Upon information and belief Rushmore received Plaintiff's April 8 Dispute to Rushmore.

63.     Pursuant to 15 U.S.C. 1681s-2(b) of the FCRA, Rushmore was then obligated to conduct a reasonable investigation with respect to the disputed information on Plaintiff's consumer report, review all relevant information provided by Equifax with respect to the April 8 Dispute, and report its results of the investigation to Equifax.

64.     In the alternative, Equifax failed to forward Plaintiff's April 8 Dispute to Rushmore and failed to conduct any investigation as to Plaintiff's dispute.

65.     On or about April 22, 2021, Plaintiff sent an online dispute through the Equifax website ("April 22 Dispute") to Equifax, identifying the inaccurate, harmful, and obsolete reporting of the Rushmore Tradeline and demanding that the inaccurate, harmful, and obsolete reporting of the information be removed.

66.     Pursuant to 15 U.S.C. 1681i of the FCRA, Equifax was then obligated to reasonably investigate Plaintiff's April 22, Dispute.

67.     Pursuant to 15. U.S.C. 1681i(a)(2) of the FCRA, Equifax was obligated to forward Plaintiff's April 22 Dispute to Rushmore, the furnisher of the Rushmore Tradeline.

68.     Upon information and belief Rushmore received Plaintiff's April 22 Dispute to Rushmore.

69.     Pursuant to 15 U.S.C. 1681s-2(b) of the FCRA, Rushmore was then obligated to conduct a reasonable investigation with respect to the disputed information on Plaintiff's consumer report, review all relevant information provided by Equifax with respect to the April 22 Dispute, and report its results of the investigation to Equifax.

70.     In the alternative, Equifax failed to forward Plaintiff's April 22 Dispute to Rushmore and failed to conduct any investigation as to Plaintiff's dispute.

71.     Plaintiff received a response from Equifax dated May 11, 2021 ("May 11 Response") regarding the previous disputes.

72.     Plaintiff was agitated and puzzled to see that the inaccuracies that she disputed regarding the Rushmore Tradeline, were not corrected.

73.     More specifically, the May 11 Response stated that Rushmore verified to Equifax that the current account status and the prior pay history on the Rushmore Tradeline was being reported accurately.

74.     On the May 11 Response, Equifax showed the Rushmore Tradeline as having an account status of "Over 120 Days Past Due Mortgage" as well as numerous late payment notations after the trustee's sale of September 2018.

75.     Plaintiff fears that, absent litigation, his Equifax consumer report will continue to reflect inaccurate and derogatory Rushmore Tradeline.

76.     As a result of Defendants' violations of the FCRA, Plaintiff suffered and continues to suffer actual damages, including denial of credit, loss of credit opportunity, damage to his reputation, worry, distress, frustration, embarrassment, invasion of privacy, humiliation, and other damages in the amount to be determined by the jury, in addition to the statutory damages in the amount to be determined by the Court.

## FIRST CLAIM FOR RELIEF
### Negligent and Willful Violations of 15 U.S.C. § 1681*i* by Equifax

77.     Plaintiff repeats, re-alleges, and incorporates by reference all paragraphs above as if fully rewritten here.

78.     A "consumer reporting agency" is defined by the FCRA as follows:

"[A]ny person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility

of interstate commerce for the purpose of preparing or furnishing consumer reports." 15 US.C. § 1681a(f).

79. Equifax a "consumer reporting agency" as defined by the FCRA.

80. Section 1681n of the FCRA imposes civil liability on any entity "who willfully fails to comply with any requirement" of the Act. *See* 15 U.S.C. § 1681n(a).

81. Section 1681o of the FCRA provides for civil liability against any entity that is negligent in failing to comply with any requirement imposed under the Act.

82. The FCRA mandates that a CRA conduct an investigation of the accuracy of information "[i]f the completeness or accuracy of any item of information contained in a consumer's file" is disputed by the consumer. *See* 15 U.S.C. § 1681*i*(a)(1). The Act imposes a 30-day time limitation for the completing of such an investigation. *Id.*

83. The FCRA provides that if a CRA conducts an investigation of disputed information and confirms that the information is, in fact, inaccurate, or is unable to verify the accuracy of the disputed information, the CRA is required to delete that item of information from the consumer's file. *See* 15 U.S.C. § 1681*i*(a)(5)(A).

**Equifax's Reasonable Reinvestigation Violations**

84. By letters dated February 2, 2021; February 8, 2021; March 4, 2021; April 8, 2021; and April 22, 2021, Plaintiff disputed the inaccuracy of the Rushmore Tradeline as it appeared on his Equifax consumer report.

85. Plaintiff specifically advised Equifax that mistakes had been made, provided all necessary information to Equifax to support the same, and requested that the tradeline be deleted or updated accordingly.

86.     Either Equifax conducted no investigation of Plaintiff's disputes, or such "investigations" were so lacking as to allow objectively false, obsolete, and highly damaging information to remain on Plaintiff's credit file.

87.     By failing to conduct a reasonable investigation into Plaintiff's disputes in this regard, Equifax willfully and/or negligently violated 15 U.S.C. § 1681*i*(a)(1).

88.     As a direct and proximate result of Equifax's disregard for Plaintiff's dispute and its obligations under the FCRA as outlined above, Plaintiff has suffered a significant loss of trust in the credit reporting system and its accountability to the average consumer such as himself.

89.     As a direct and proximate result of Equifax's willful and/or negligent refusal to conduct reasonable investigations as mandated by the FCRA as outlined above, Plaintiff has suffered loss and damage including, but not limited to: financial loss, loss of credit opportunity, a justifiable fear to request credit, expenditure of time and resources, mental anguish, humiliation and embarrassment, entitling them to an award of actual damages in amounts to be proved at trial, plus attorneys' fees together with the costs of this action pursuant to 15 U.S.C. § 1681*o*.

90.     Upon information and belief, Equifax has exhibited a pattern of refusing to correct consumer credit files despite being on notice of patently false information contained in such files, ultimately valuing its own bottom line above its "grave responsibility" to report accurate data on consumers.

91.     Equifax's pattern of refusal to correct patently false information as mandated by the FCRA reveals a conscious disregard of the rights of Plaintiff.  The injuries suffered

by Plaintiff are attended by circumstances of fraud, malice, retaliation, and willful and wanton misconduct, calling for statutory damages, an assessment of punitive damages, plus attorneys' fees and costs pursuant 15 U.S.C. § 1681*n*.

**WHEREFORE** Plaintiff prays for judgment on this ***First Claim for Relief*** in his favor and against Equifax, and for the following relief:

(a)    Actual damages sustained;

(b)    Statutory damages of not less than $100 and not more than $1000 on each willful violation of the FCRA;

(c)    Punitive damages in an amount to be determined by the jury;

(d)    Reasonable attorneys' fees and costs; and

(e)    Any other and/or further relief as deemed appropriate and just by this Honorable Court.

## SECOND CLAIM FOR RELIEF

### Negligent and Willful Violations of 15 U.S.C. § 1681s-2 Against Rushmore

92.    Plaintiff repeats, re-alleges, and incorporates by reference all paragraphs above as if fully rewritten here.

93.    Rushmore is a "furnisher" as that term is used in 15 U.S.C. § 1681*s-2*.

94.    Furnishers of credit information have duties under the FCRA, specifically 15 U.S.C. § 1681*s-2*(b)(1), to investigate disputes initiated from consumers to CRAs as to the accuracy of information reported about them by the furnisher.

95.    On at least five occasions, namely February 2, 2021; February 8, 2021; March 4, 2021; April 8, 2021; and April 22, 2021, Plaintiff contacted Equifax specifically

to dispute the accuracy of how the Account was being reported as the Rushmore Tradeline.

96.     Plaintiff specifically advised Equifax on each occasion that mistakes had been made, and requested the false information be corrected accordingly.

97.     Upon information and belief, and pursuant to 15 U.S.C. § 1681$i$(a)(2), Rushmore received notification of these disputes from Equifax and sent notice to Equifax verifying the information from the Rushmore Tradeline as accurate.

98.     Nevertheless, on multiple occasions, the inaccurate and harmful data from the Rushmore Tradeline was allowed to remain on Plaintiff's Equifax consumer report.

99.     Either Rushmore conducted no real investigation of Plaintiff's disputes, or such "investigations" were so lacking as to allow information known to be false and highly damaging to remain on Plaintiff's consumer report.

100.    By failing to conduct a reasonable investigation into Plaintiff's disputes in this regard, Rushmore negligently and/or willfully violated § 1681$s$-$2$(b)(1) with respect to each dispute lodged by Plaintiff.

101.    As a direct and proximate result of Rushmore's willful and/or negligent refusal to comply with the FCRA as described herein, Plaintiff has suffered loss and damage including, but not limited to: financial loss, loss of creditworthiness, loss of credit opportunity, damage to reputation, expenditure of significant time, energy and out-of-pocket costs, considerable distress, mental anguish, worry, frustration, fear and embarrassment, entitling Plaintiff to an award of actual damages as determined by the jury, plus attorneys' fees and the costs of this action, pursuant to 15 U.S.C. § 1681$o$.

102.    Rushmore's indifference as to its obligations under the FCRA reveals a

conscious disregard of the rights of Plaintiff, and the injuries suffered by Plaintiff are attended by circumstances of fraud, malice, and willful and wanton misconduct, calling for an assessment of punitive damages against Rushmore pursuant to 15 U.S.C. § 1681$n$(a)(2).

**WHEREFORE** Plaintiff prays for judgment on this ***Second Claim for Relief*** in his favor and against Rushmore, and for the following relief:

(a)   Actual damages sustained;

(b)   Statutory damages of not less than $100 and not more than $1000 on each willful violation of the FCRA;

(c)   Punitive damages in an amount to be determined by the jury;

(d)   Reasonable attorneys' fees and costs; and

(e)   Any other and/or further relief as deemed appropriate and just by this Honorable Court.

## <u>JURY DEMAND</u>

Plaintiff respectfully demands a jury trial on all issues so triable.

Date: June 22, 2021

Respectfully submitted,

By:   *<u>/s/ Anthony Hernandez</u>*
Anthony Hernandez
KSD: 78743
Credit Law Center LLC
4041 NE Lakewood Way
Ste. 200
Lee's Summit, MO 64064
Tel: (816) 282-0422
anthonyh@creditlawcenter.com

*Counsel for Plaintiff*